

_____
**ROBERT A. GORDON
U. S. BANKRUPTCY JUDGE**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Baltimore

| | | | |
|---|---|---|---|
| In Re: | * | | |
| Michelle D. Tubman | * | Case No. | 06-15054-RAG |
| | * | Chapter | 13 |
| | * | | |
| | * | | |
| Debtor | * | | |

## **REVISED MEMORANDUM OPINION**[1]

In this case, the Court is presented with two questions for decision.  First, can a motion to extend the automatic stay under 11 U.S.C. § 362(c)(3)(B)[2] filed after the close of the 30-day post-petition window be considered by the Court?  And second, if not, to what extent does Section 362(c)(3)(A) operate to terminate the automatic stay provided by Section 362(a)?

The Parties agree that Debtor filed an untimely motion for continuation of the automatic stay under Section 362(c)(3)(B).  Pursuant to the new regimen brought about by the Bankruptcy Abuse Prevention and Consumer Protection Amendments ("BAPCPA"), it is plain that the absence of a

---

[1] The Court has made several minor technical amendments to its prior Memorandum Opinion entered on March 23, 2007.  These changes do not affect the Court's ruling.

[2] All statutory citations are to the Bankruptcy Code, found at Title 11 of the United States Code, unless otherwise noted.

timely motion triggers some effect on the automatic stay under Section 362(c)(3)(A).  The Parties disagree, however, as to the nature and scope of that effect.  And with an eye towards her potentially risky position, Debtor also offers a possible alternative avenue for relief that envisions the creation of an injunctive stay against creditor action under Section 105(a).

Debtor principally argues that Section 362(c)(3)(A)'s termination of the automatic stay is of limited impact.  Debtor contends that while the specific language of 362(c)(3) terminates the automatic stay as to actions against the debtor and property of the debtor, the selfsame language leaves the stay in effect as to property of the estate.  Alternatively, Debtor argues that assuming Section 362(a)'s automatic stay is gone for good and cannot now be extended, the Court can still use the equitable powers granted under Section 105(a) to construct a new injunctive stay.

On the opposite side of the debate, Respondent Litton Loan Servicing ("Litton") contends that when Section 362(c)(3) is activated the automatic stay is terminated *in toto*, with no protection remaining for either the debtor, her property, or property of the estate.  Respondent also contends that triage relief under Section 105(a) is not appropriate because BAPCPA's new statutory scheme is the sole refuge from creditor action in this context and, moreover, Debtor has not satisfied the legal standards for the imposition of an injunction.

For the reasons stated below, the Court holds that while an untimely filed motion cannot serve to reimpose the automatic stay pursuant to Section 362(c)(3)(B), nevertheless the automatic stay is not terminated as to property of the estate under the controlling statutory language.

Factual Background

On November 3, 2003, Debtor filed her most recent prior Chapter 13 case (03-65647-JFS). The City of Baltimore filed a $1,762.27 priority tax claim and Cavalry Portfolio Services, LLC filed a general unsecured claim in the amount of $761.33.  Litton, holder of a Note secured by a Deed of Trust (the "Security Documents") on Debtor's residence located at 1718 Hartsdale Road, Baltimore,

-2-

MD 21239 (the "Residence"), filed a claim in the amount of $70,556, that included pre-petition arrears of $23,254.82.  Debtor's plan, as amended by line filed on December 9, 2003 and confirmed on March 2, 2004, called for 60 monthly payments of $512 to her Chapter 13 Trustee.  Hence, the majority of plan proceeds, totaling $30,720, were to be distributed to Litton to pay in full the outstanding arrears.

On May 6, 2004, JP Morgan Chase Bank ("Morgan") as Trustee, c/o Residential Funding Corporation, filed a motion for relief from stay as to the Residence[3].  On June 18, 2004, the parties' consent order modifying automatic stay was entered and Morgan's motion was thereby resolved.  Per the consent order, Debtor was required, among other things, to cure a post-petition default in the amount of $3,312.   Morgan filed an affidavit of default under the consent order on October 21, 2005 and Debtor cured the same as confirmed by line filed on November 15, 2005.

On April 19, 2006, the Trustee filed a motion to dismiss for material default in plan payments, alleging that Debtor was in default for 11 months or approximately $5,500.  Although Debtor initially objected, she later withdrew her response and the case was dismissed on July 5, 2006.  At the October 25, 2006 hearing in the current case, Debtor's counsel proffered that before dismissal Debtor's total plan payments in the prior case amounted to approximately $9,300.  Likewise through proffer, Debtor attributes the dismissal of the prior case to both her loss of employment and her spouse's incarceration, resulting in her inability to make plan payments.

---

[3] The Court notes that Morgan's motion for relief from stay does not explain whether Morgan was in fact the originator of the loan, assignee of the Security Documents, or the loan servicer at the time the motion was filed.  The principal amount of the loan cited in the document, $48,644.14, closely approximates the principal amount, $48,676.26, stated in Litton's proof of claim filed on December 23, 2003.  Moreover, Debtor's plan called for the mortgage arrears of $23,000 to be paid to Homecomings Financial Network, Inc.  The relationship between the three separate entities is unclear from the record.  The Court assumes for purposes of this opinion that each creditor bases its claim on the Security Documents.

Debtor filed this case on August 23, 2006, 49 days after the dismissal of the prior case. Debtor's amended plan, filed on November 3, 2006 and confirmed on December 1, 2006, calls for payments of $570 for 3 months and then payments of $630 for the remaining 57 months.  Of the $37,620 in anticipated plan proceeds, the majority will be distributed to Litton on account of pre-petition arrears in the amount of $23,250[4].

Since Ms. Tubman was a Debtor in a case dismissed within the preceding year, BAPCPA's recently minted Section 362(c)(3) applies to this case.  Accordingly, on September 18, 2006, Debtor filed a motion to extend automatic stay under Section 362(c)(3)(B).  By a hair, that motion would have been made within the initial 30 day period except that Counsel erroneously filed it in the dismissed 2003 case.  An order denying the motion, which noted that the 2003 case was dismissed on July 5, 2006, was therefore entered on September 25, 2006[5].  On the same day, Debtor filed the pending Motion to Extend Automatic Stay (the "Motion to Extend Stay") in this case.  The end result is that the Motion to Extend Stay before the Court for consideration was filed on the 33rd day post-petition[6].

---

[4] The amount stated in the text is derived from Debtor's plan.  Per proof of claim filed December 29, 2006, Litton states that the pre-petition arrears total $25,645.78.

[5] Debtor's Counsel withdrew that motion on September 26, 2006.  The order denying motion to extend stay was vacated on September 27, 2006.

[6] The 30th day post-petition was Friday, September 22, 2006.

-4-

To establish her good faith, Debtor avers in her Motion to Extend Stay that although the 2003 case was dismissed in part because of her loss of income[7], she has now obtained a new, higher paying job[8]. Debtor also notes that this case was filed to save her home and its valuable equity[9].

Litton, as servicing agent for the holder of the Deed of Trust, immediately objected to the Motion to Extend Stay by a response filed on September 26, 2006. Litton alleged Debtor was a serial filer[10] and, as such, did not have the requisite degree of good faith necessary to justify an extension of the stay. Litton also noted that Debtor's two prior cases were filed on the eve of scheduled foreclosure sales and that neither case proved to be successful in the long run.

Debtor's Motion to Extend Stay was scheduled for the first available hearing date of September 29, 2006. Debtor and her Counsel appeared as did Counsel for Respondent. Before

---

[7] In order to evade Section 362(c)(3)(C)(ii)'s presumption of bad faith, Debtor also claims in the Motion to Extend Stay that her previous case had not been dismissed after a party obtained relief from the automatic stay. The consent order entered on June 18, 2004 negates that assertion.

[8] The Debtor's Schedules do confirm her greater solvency as compared to the 2003 case. Schedule I in Debtor's 2003 case filed on November 3, 2003 indicates Debtor was making $1,625 in monthly net income. Scheduled I in Debtor's current case filed on August 23, 2006 indicates Debtor receives $2,083 in monthly net income. Debtor's monthly expenses, $2,263 at the time of 2003 case, have also been reduced to $1,512 per her Schedule J.

[9] According to Debtor's Schedule A, filed on August 23, 2006, the Residence is worth approximately $130,000. The Litton Deed of Trust encumbering the Residence secures an indebtedness in the approximate amount of $70,000. On her Schedule "C", Debtor has exempted $5,000 of the Residence's equity. As the remaining non-exempt equity is greater than the sum of all her unsecured debt, Debtor's plan provides for the payment of all claims in full, as it must, to satisfy Section 1325(a)(4)'s liquidation test.

[10] This is Debtor's third case within the last four years. In addition to the 2003 case, Debtor filed a case under Chapter 13 (02-55346-JFS) on April 2, 2002. Pursuant to the amended plan confirmed on September 30, 2002, Debtor was to make 60 payments in the amount of $315 for a total plan base of $18,900. A consent order modifying automatic stay between Debtor and Homecomings Financial Network, Inc. was entered on February 6, 2003. The case was dismissed on August 22, 2003 on the Chapter 13 Trustee's motion to dismiss for material default in plan payments. Debtor's counsel proffered that she had paid approximately $3,300 under that first plan and that the dismissal resulted from her loss of employment.

hearing from Counsel the Court noted that it appeared the Motion to Extend Stay had been filed out of time.  Neither Debtor nor Respondent had addressed this issue in their papers and neither was prepared to present meaningful argument.  In light of the substantial and disparate case law that has grown under BAPCPA with respect to the underlying issues and in order to make a fully informed decision, the automatic stay was continued on an emergency basis to allow the Parties to fully brief the questions presented.  Debtor submitted her Brief in Support of the Motion to Extend Stay as to Debtor and Motion for Declaratory Judgment[11] as to Continuation of the Stay as to Property of the Estate (the "Motion for Declaratory Judgment") on October 6, 2006.  Respondent filed its memorandum in opposition on October 20, 2006.

The Court reconvened for the presentation of evidence and argument on October 25, 2006[12].  With no objection, Debtor's testimony was presented by proffer.  The relevant facts are set forth above.  It was also noted that since the filing of this case, Debtor had made two mortgage payments and the one plan payment that had come due[13].

---

[11] In certain instances not applicable here, Federal Rule of Bankruptcy Procedure 7001(9) requires that a declaratory judgment be sought by way of adversary proceeding.  Relief from the automatic stay is typically sought by motion as a contested matter pursuant to Federal Rules of Bankruptcy Procedure 4001(a) and 9014.  Issues ancillary to a lift stay motion are normally decided within the contested matter.  Since Debtor is merely seeking a declaration as to the extent of the termination of the automatic stay, this contested matter is the appropriate context for deciding this issue.

[12] On October 26, 2006, the Court entered an order continuing the stay on an emergency basis pending the issuance of this decision.

[13] Respondent points out that Debtor did not make the mortgage payment due August 25th until October 6th.  Debtor herself noted that the September mortgage payment was not mailed until October 13th.  Debtor stated she would make the October payment the day after the hearing.  Respondent also notes that the first plan payment made on October 18th was in fact due on September 23rd under Section 1326(a)(1).

Analysis

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, 157, and Local Rule 402 of the United States District Court for the District of Maryland. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G).

Section 362(c) generally identifies the ways by which the automatic stay of Section 362(a) can terminate independent of a judicial determination made under Section 362(d). Sections 362(c)(3) and (4) are relatively new, having been added to Title 11 by BAPCPA and made effective on October 17, 2005. Section 362(c)(3) is applicable to one-time repeat bankruptcy filers - debtors who have had only one bankruptcy case dismissed within the previous year. For one-time repeat filers, the automatic stay terminates on the 30th day post-petition unless a party in interest files a motion to extend automatic stay that is noticed and heard by the Court before the expiration of the 30-day period. This Court has previously announced the standards governing adjudication of a timely filed motion to extend automatic stay by a one-time repeat filer under Sections 362(c)(3)(B) and (C). In re Mark, 336 B.R. 260 (Bankr. D. Md. 2006).

By contrast, Section 362(c)(4) applies to multiple repeat filers, meaning debtors who have had two or more bankruptcy cases dismissed within the previous year. For multiple repeat filers, the automatic stay does not even go into effect upon the filing of the later case. Instead, a party in interest can seek to have the court impose the automatic stay by filing a motion within 30 days after the filing of the later case.

In this case, the Court must decide the effect of an untimely filed motion to extend automatic stay under Section 362(c)(3).

Section 362(c)(3) provides:

> (3)      if a single or joint case is filed by or against debtor who is an individual in a case under chapter 7, 11, or 13, and if a single or joint case of the debtor was pending

within the preceding 1-year period but was dismissed, other than a case refiled under a chapter other than chapter 7 after dismissal under section 707(b)—

(A)  the stay under subsection (a) with respect to any action taken with respect to a debt or property securing such debt or with respect to any lease shall terminate with respect to the debtor on the 30th day after the filing of the later case;

(B)  on the motion of a party in interest for continuation of the automatic stay and upon notice and a hearing, the court may extend the stay in particular cases as to any or all creditors (subject to such conditions or limitations as the court may then impose) after notice and a hearing completed before the expiration of the 30-day period only if the party in interest demonstrates that the filing of the later case is in good faith as to the creditors to be stayed; and

(C)  for purposes of subparagraph (B), a case is presumptively filed not in good faith (but such presumption may be rebutted by clear and convincing evidence to the contrary)--

    (i)  as to all creditors, if–

        (I)  more than 1 previous case under any of chapters 7, 11, and 13 in which the individual was a debtor was pending within the preceding 1-year period;

        (II)  a previous case under any of chapters 7, 11, and 13 in which the individual was a debtor was dismissed within such 1-year period, after the debtor failed to—

            (aa)  file or amend the petition or other documents as required by this title or the court without substantial excuse (but mere inadvertence or negligence shall not be a substantial excuse unless the dismissal was caused by the negligence of the debtor's attorney);

            (bb)  provide adequate protection as ordered by the court; or

            (cc)  perform the terms of a plan confirmed by the court; or

        (III)  there has not been a substantial change in the financial or personal affairs of the debtor since the dismissal of the next most previous case under chapter 7, 11, or 13 or any other reason to conclude that the later case will be concluded—

            (aa)  if a case under chapter 7, with a discharge; or

       (bb) if a case under chapter 11 or 13, with a confirmed plan that will be fully performed; and

   (ii) as to any creditor that commenced an action under subsection (d) in a previous case in which the individual was a debtor if, as of the date of dismissal of such case, that action was still pending or had been resolved by terminating, conditioning, or limiting the stay as to actions of such creditor.

  Initially, the Court must decide whether an untimely motion to extend the automatic stay can be entertained at all. Section 362(c)(3)(A) is self-executing and serves to terminate the stay "on the 30th day after the filing of the later case". Under Section 362(c)(3)(B), if a party in interest desires the continuation of the stay beyond that period, then a motion to extend automatic stay must both be filed and granted "after notice and hearing completed before the expiration of the 30-day period"[14]. The plain meaning of these subsections leads inevitably to the conclusion that if a motion to extend automatic stay is to be granted, that can occur only after a properly noticed hearing conducted within 30 days of the filing of the case.

  In this case, Debtor's Motion to Extend Stay was not filed until the 33rd day post-petition and the hearing was not conducted until day 37. We conclude the automatic stay terminated by operation of law on the 30th day post-petition under 362(c)(3)(A) and the Court therefore cannot consider Debtor's untimely filed Motion to Extend Stay. In re Moon, 339 B.R. 668, 670 (Bankr. N.D. Oh. 2006); In re Whitaker, 341 B.R. 336, 342 (Bankr. S.D. Ga. 2006); In re Norman, 346 B.R. 181, 183 (Bankr. N.D. W.Va. 2006).

  If a party in interest is going to seek an extension of the stay under Section 362(c)(3)(B), their motion must be filed early enough to allow for adequate notice and a hearing to be held within

---

[14] By contrast, in order to impose the stay in the case of a multiple repeat filer, Section 362(c)(4)(B) only requires the filing of a motion within 30 days after the filing of the later case and does not require that notice and a hearing be completed within the initial 30 days post-filing.

the proscribed accelerated time frame[15]. Every effort is made by the Court to promptly accommodate Section 362(c)(3) motions. Nevertheless, the moving party retains the ultimate burden of ensuring the timely filing of the motion and then its prompt scheduling. In the event a 362(c)(3) motion is either filed close to the 30 day deadline or is not promptly scheduled for hearing by the Court, the movant should seek emergency relief. In summary, this Court agrees with other courts that have considered this issue. Once the stay expires by operation of Section 362(c)(3)(A), the stay cannot be re-imposed under Section 362(c)(3)(B) as if it had not been terminated. In re Williams, 346 B.R. 361, 370 (Bankr. E.D. Pa. 2006); In re Toro-Arcila, 334 B.R. at 226.

Although an untimely filed motion under Section 362(c)(3)(B) may not be considered, the question as to the extent of stay termination under Section 362(c)(3)(A) remains. This places the proper interpretation of Section 362(c)(3)(A)'s plain meaning squarely before the Court. As noted earlier, Debtor contends in her Motion for Declaratory Judgment that the statute's plain meaning conclusively leads to only a partial termination of the automatic stay. Debtor asserts Section 362(c)(3)(A) should be interpreted in the same manner as the majority of courts that have considered the issue to reach the conclusion that the stay is terminated only as to the debtor, but not as to property of the estate. In defense of a broad reading, Respondent argues that logic and policy,

---

[15] Some courts allow a one-time repeat filer to seek imposition of a stay under Section 362(c)(4) if it will be impossible to conduct a hearing on a motion to extend the stay under Section 362(c)(3) within the 30-day post-petition window. See In re Toro-Arcila, 334 B.R. 224, 229 (Bankr. S.D. Tex. 2005) (debtor filed motion pursuant to both Sections 362(c)(3) and (c)(4) on 30th day post-petition and court allowed Debtor to proceed pursuant to Section 362(c)(4)); In re Beasley, 339 B.R. 472, 474 (Bankr. E.D. Ark. 2006) (holding that one-time repeat filer can file motion under Section 362(c)(4) but such motion must be filed within 30 days post-petition). Other courts have held that one-time repeat filers cannot seek relief under Section 362(c)(4). See In re Norman, 346 B.R. at 183-184 (holding that one-time repeat filer must seek relief exclusively under Section 362(c)(3)); In re Whitaker, 341 B.R. at 342 (holding that Section 362(c)(4) is not available to one-time repeat filer, but reinstating the stay under Section 105(a) when debtor met the injunction standard by demonstrating good faith under Section 362(c)(3) by clear and convincing evidence and the motion was filed within 30 days post-petition). The Court takes no position on the propriety of either approach as that issue is not presented by this dispute.

in addition to legislative history, dictate the interpretation that the automatic stay is terminated both as to the debtor and property of the estate. Respondent primarily relies upon two cases in support of this position. The choice between these two possible interpretations will have a measure of importance for bankruptcy practitioners in this District.

As noted in a recent Fourth Circuit decision, the Supreme Court has consistently held that statutory construction begins with the plain meaning of the language used in the statute. In re Coleman, 426 F.3d 719, 724-725 (4th Cir. 2005). As succinctly summarized in In re Coleman:

> Statutory interpretation necessarily begins with an analysis of the language of the statute. See Landreth Timber Co. v. Landreth, 471 U.S. 681, 685, 105 S.Ct. 2297, 85 L.Ed.2d 692 (1985). In analyzing statutory language, we must first "determine whether the language at issue has a plain and unambiguous meaning." Robinson v. Shell Oil Co., 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997). Our determination of whether a statute is ambiguous is guided "by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." Id. at 341, 117 S.Ct. 843. If the language is plain and "the statutory scheme is coherent and consistent," we need not inquire further. United States v. Ron Pair Enters., 489 U.S. 235, 240-41, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). In that situation, "the sole function of the courts is to enforce [the statute] according to its terms." Caminetti v. United States, 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917).

Of course statutory construction is a "holistic endeavor". United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd., 484 U.S. 365, 371 (1988). As noted by the Supreme Court in United Sav. Ass'n of Texas:

> A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme-because the same terminology is used elsewhere in a context that makes its meaning clear, see, e.g., Sorenson v. Secretary of Treasury, 475 U.S. 851, 860, 106 S.Ct. 1600, 1606, 89 L.Ed.2d 855 (1986), or because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law.

Courts should venture beyond a statute's plain meaning only in those rare instances where there is a clearly expressed and unmistakable legislative intent to the contrary or where a literal application of the statute would either thwart its obvious purpose or produce an absurd result.

-11-

Chesapeake Ranch Water Co. v. Bd. of Com'rs of Calvert County, 401 F.3d 274, 280 (4th Cir. 2005).

The crucial language in the case at bar is set forth in Section 362(c)(3)(A), which provides:

the stay under subsection (a) with respect to any action taken with respect to a debt or property securing such debt or with respect to any lease *shall terminate with respect to the debtor* on the 30th day after the filing of the later case. (emphasis supplied)

This subsection is somewhat verbose. It repeats the phrase "with respect to" four times in a tight space. Nevertheless, the italicized, operative language regarding termination of the stay is clear. The stay of each action referenced in Section 362(a), regarding debts, property securing debts, or leases, is terminated "with respect to the debtor" only. This phrase, "shall terminate with respect to the debtor", has a plain and unambiguous meaning standing alone[16]. Its use here is also consistent with the broader statutory context in which it is located, as will be explained below.

Therefore, this Court agrees with the majority of courts that have considered this issue to date and accordingly holds that when Section 362(c)(3)(A) self-executes, the automatic stay is terminated as to actions against the debtor and property of the debtor but not as to any actions against property of the estate. See e.g. In re Johnson, 335 B.R. 805, 806 (Bankr. W.D. Tenn. 2006); In re Jones, 339 B.R. 360, 363 (Bankr. E.D. N.C. 2006); In re Moon, 339 B.R. at 673; In re Williams, 346 B.R. at 370; In re Brandon, 349 B.R. 130, 132 (Bankr. M.D. N.C. 2006); In re Jumpp, --- B.R. ---, 2006 WL 3802702 at *7 (1st Cir. B.A.P. 2006).

---

[16] The Respondent relies upon In re Jupiter, 344 B.R. 754, 759 (Bankr. D. S.C. 2006) for the proposition that under a plain meaning approach, primary emphasis should be placed on the phrase "shall terminate", with the result that the automatic stay is categorically terminated *in toto*. That court construed the subsequent phrase "with respect to the debtor" to define which debtor in a jointly-filed case is affected by the provision. Id. The Court is not convinced that this reading is correct. Without more by way of explanation, it is difficult to discern how the words "the debtor" could naturally be limited to mean only a co-debtor in a jointly filed case. Moreover, the Court believes that the verb and object must be read in conjunction, as the phrase "with respect to the debtor" is closely analogous to the term of art "against the debtor" used in Section 362(a).

A narrow reading of the scope of the termination of the stay under Section 362(c)(3)(A) is consistent with the general declaration of the stay contained in Section 362(a). Some subsections of 362(a) reference acts against the debtor while others encompass acts against property of the debtor or property of the estate. For example, Sections 362(a)(1), (2), (6), and (7) specify acts that are stayed against the debtor. Section 362(a)(5) specifies acts that are stayed against property of the debtor. Sections 362(a)(2), (3), and (4) specify acts that are stayed against property of the estate. Thus in the automatic stay's fundamental architecture, Congress has demonstrated that it knows how to differentiate between providing protection for the debtor, property of the debtor, and property of the estate. The careful parsing reflected in the plain meaning of Section 362(c)(3)(A) is simply further evidence of Congressional wisdom.

Congress has also drawn discrete lines as to the precise scope of the termination of the stay in other BAPCPA provisions. Under Sections 362(h)(1)(A) and (B), if a Chapter 7 debtor fails to timely file a statement of intention or fails to timely perform such intention pursuant to Section 521(a)(2), then the automatic stay terminates "with respect to personal property of the estate or of the debtor" securing in whole or in part a claim and "such personal property shall no longer be property of the estate"[17]. This language is much broader than the language contained in Section 362(c)(3)(A). Nevertheless, Section 362(h)(2) includes a safeguard which allows the Chapter 7 trustee to prevent termination if the Court finds the subject personal property is of consequential benefit to the estate. Thus, although the stay can terminate as to personal property of the estate if the debtor is derelict in his duties, Congress gives the trustee an opportunity to prevent termination if a benefit to the estate can be proven. Implicit in this safeguard is Congressional recognition that

---

[17] The deadline for filing the statement of intention is the 30th day post-petition or by the date of the meeting of creditors, whichever is earlier. Section 521(a)(2)(A). The deadline for performing such intention is the 30th day after the first date set for the meeting of creditors. Section 521(a)(2)(B).

terminating the stay as to property of the estate is a serious consequence that is best accomplished by explicit command. Section 362(c)(3)(A) does not contain such an express safeguard, so it is reasonable to conclude the crucial provision should be taken at face value.

Likewise, Section 521(a)(6), which operates similarly to Section 362(h), also terminates the stay "with respect to personal property of the estate or of the debtor" and provides that "such property shall no longer be property of the estate"[18]. Section 521(a)(6) also includes the same safeguard for property of the estate found in Section 362(h)(2). These provisions, enacted simultaneously with Section 362(c)(3) as a part of the comprehensive BAPCPA scheme, ably demonstrate Congress's ability to decide with precision the extent to which the stay would be terminated and to employ the correct language to achieve that result. In this context, the Court sees no reason not to take Congress at its word and rule accordingly.

This decision is consistent with the general structure of Section 362(c). Under Section 362(c)(1), the stay of an act against property of the estate continues until such property is no longer property of the estate. This can happen, for example, because the property has been exempted, abandoned, or because the bankruptcy estate no longer exists due to the dismissal of the bankruptcy case[19]. Section 362(c)(2) provides that the stay of any other act (i.e. against the debtor or property of the debtor) continues until the case is dismissed, closed, or the time the debtor receives a discharge. As companions to these provisions, Congress added Section 362(c)(3) to provide an incremental reduction of the stay as to one-time repeat filers and Section 362(c)(4) to impose even

---

[18] In addition to lifting the stay and removing personal property from the bankruptcy estate, Section 521(a)(6), effective on the 45th day after the first meeting of creditors, also provides that the debtor must not retain the property if the debtor has neither reaffirmed nor redeemed the property.

[19] Also, some property in which the debtor has a pre-petition interest never vests at all in the bankruptcy estate because it is excluded from the definition of property of the estate by operation of Section 541(b).

harsher penalties, i.e. no stay at all unless the court orders one into existence, as to multiple repeat filers.

In interpreting Section 362(c)(3), the Court finds the language of Section 362(c)(4)(A)(i) compelling and instructive.  Although Sections 362(c)(3) and (c)(4) are structured similarly, the language, and thus the intent, of Section 362(c)(4)(A)(i) contrasts sharply with that of Section 362(c)(3)(A).  For multiple repeat filers, the "stay under subsection (a) shall not go into effect upon the filing of the later case".  With this simple command, free of any nuance or fine distinction, Congress entirely stripped away the protections of Section 362(a) from multiple repeat filers.  As the Court of Appeals for the Fourth Circuit recently observed, the use of a particular phrase in one statute but not in another "merely highlights the fact that Congress knew how to include such a limitation when it wanted to."  In re Coleman, 426 F.3d at 725.  Thus "where Congress includes particular language in one section of a statute but omits it in another, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." Keene Corp. v. U.S., 508 U.S. 200, 208 (1993).  Since Congress chose not to employ similarly all-encompassing terminology in Section 362(c)(3), the Court can only conclude that these two companion subsections which became effective on precisely the same day, must be given different effect according to their plain meaning.  In short, the Court concludes that Congress deliberately chose to treat multiple repeat filers in a manner dramatically different from debtors covered by Section 362(c)(3).

As the language of Section 362(c)(3) is unambiguous, the Court should venture beyond its plain meaning only if its literal application would thwart its obvious purpose or produce an absurd result.  To that end, Respondent cites two cases to establish that the majority position is wrong and, moreover, that the purpose of Section 362(c)(3) is to encumber the one-time repeat filer with the heavy burden of seeking the extension of the entire automatic stay upon clear and convincing proof

of good faith in an expedited framework. In re Jumpp, 344 B.R. 21, 26-27 (Bankr. D. Mass. 2006), *rev'd*, --- B.R. ---, 2006 WL 3802702 at *7 (1st Cir. B.A.P. 2006)[20]; In re Jupiter, 344 B.R. at 760. Given the obvious high evidentiary bar set by Congress, and the attendant consumption of resources, Respondent contends an interpretation that only incrementally reduces the stay, without modifying it as to property of the estate, renders Section 362(c)(3) virtually meaningless, and a waste of litigant and judicial resources. Id.

Section 1306 broadly defines property of the estate to include both the debtor's pre-petition property and property acquired after the commencement of the case. Indeed, as noted in In re Jupiter, in a normal Chapter 13 case, property of the estate encompasses nearly all of a debtor's assets. 344 B.R. at 760. Under Section 1327(b) and our District's local practice, property of the estate remains as such until the debtor completes the plan and is rewarded with a discharge, or, the case is dismissed. Thus, even though the automatic stay partially terminates pursuant to Section 362(c)(3), under this Court's interpretation Respondent would still be precluded from taking any action against property of the estate, including foreclosure pursuant to the Security Documents on Debtor's Residence. Respondent claims this would be an absurd result.

While the Court recognizes the appeal of the underlying premise of Respondent's argument given the In re Mark decision, the Court disagrees with Respondent's conclusion, as the incrementally reduced stay does not render Section 362(c)(3)(A) virtually meaningless. The partial termination of the stay under Section 362(c)(3) does impose potentially significant consequences on the debtor.

> Given the wording and categorization found in section 362(a), termination of the stay with respect to the debtor means that: suits against the debtor can commence or continue post-petition because Section 362(a)(1) is no longer applicable; judgments may be enforced

---

[20] The Bankruptcy Appellate Panel of the 1st Circuit issued its opinion on December 28, 2006, after the instant matter was argued before this Court.

>against the debtor, in spite of Section 362(a)(2); collection actions may proceed against the debtor despite Section 362(a)(6); and liens against the debtor's property may be created, perfected and enforced regardless of section 362(a)(5).

In re Williams, 346 B.R. at 367. Because these otherwise available protections would be abrogated, creditors can proceed against the debtor *in personam*, obtain a judgment, and attempt to obtain a lien upon property of the debtor to the extent any is available. In Chapter 7, garnishment can continue since earnings from services performed post-petition are not property of the estate under Section 541(a)(6). Finally, if a creditor decides its circumstances require immediate relief, a motion to terminate, modify, or condition the stay under Section 362(d) can always be filed notwithstanding the limits of Section 362(c)(3). All in all, the Court is hard pressed to see that the creditor options still available can be deemed "absurd" in this context such that the precise statutory language should be either ignored or somehow twisted to produce a different result.

Several courts have noted that by providing a lesser penalty than complete termination of the entire automatic stay, Congress has attempted to balance competing interests. See e.g. In re Williams, 346 B.R. at 369. The first step in this process is the bright line etched between the treatment of one-time repeat filers and multiple repeat filers. Indeed, it is not illogical or absurd to apply harsher consequences to a debtor who is in a third (or more) bankruptcy case within one year versus a debtor who has filed only a second case within the year. Moreover, on the other side of the scale, by keeping the stay in place as to property of the estate, creditors are also protected. In the Chapter 13 context, the less troublesome debtor is given a more meaningful opportunity to consummate the plan. In re Jones, 339 B.R. at 365. In the Chapter 7 context, trustees are given time to administer estate property for the benefit of all creditors. In re Jumpp, 2006 WL 3802702 at *7.

Respondent primarily relies upon the legislative history, as did the court in In re Jupiter, to support its position that Congress's presumed intent, instead of Congress's words, should control.

-17-

344 B.R. at 761. However, having found the operative language of Section 362(c)(3) to be plain and unambiguous, consistent with the statutory context, and not the proximate cause of an absurd result, this Court does not have to resort to the legislative history for proper interpretation. Counsel for Respondent conceded at oral argument that while he believes Congress's intent to be clear, "they may not have said it properly" in selecting the language enacted in Section 362(c)(3). Such a concession further compels the conclusion that the plain meaning of the statute does not mesh with Respondent's interpretation. As the plain meaning of Section 362(c)(3) is not subject to meaningful dispute, Respondent's reliance on the legislative history is misplaced.

As a final matter, the Court will briefly address the alternative relief requested by Debtor in the Motion for Declaratory Judgment. Given the Court's ruling that the stay shall continue in effect as to actions against property of the estate, the alternative equitable relief Debtor seeks pursuant to Section 105(a) now appears unnecessary. Additionally, Debtor has not made any argument specifically seeking the imposition of an injunctive stay as to actions against the Debtor or property of the Debtor. See e.g. In re Williams, 346 B.R. at 372. Debtor has attained her asserted goal, to prevent immediate foreclosure upon the Residence, and this goal focuses entirely upon protecting property of the estate. Debtor has not explained why it is necessary to provide any further extraordinary relief to stay, *inter alia*, actions against the Debtor *in personam*. Therefore, the Court will deny, without prejudice, Debtor's request to extend the automatic stay under Section 105(a)[21].

---

[21] The Court notes that there is also somewhat contradictory case law on the issue of whether a motion to impose a stay under 105(a) must be filed within the 30-day window. Compare In re Williams, 346 B.R. at 371 (Court entertained motion to impose stay pursuant to Section 105(a) filed after expiration of 30 days period) with In re Whitaker, 341 B.R. at 346 (one-time repeat filer filed Section 362(c)(4) motion to impose stay within 30 days post-petition which the Court treated as a motion pursuant to Section 105(a)). The Court does not decide this issue as it is unnecessary for the resolution of the matter at hand.

Conclusion

Debtor filed an untimely Motion to Extend Stay as to all creditors under Section 362(c)(3) which the Court is barred from considering since such motion may only be granted after a hearing held within 30 days post-petition. However, the Court grants Debtor's Motion for Declaratory Judgment and holds that Section 362(c)(3)(A) only functions to incrementally terminate the stay as to actions against the debtor and property of the debtor. Section 362(c)(3)(A) does not self-execute to terminate the stay as to property of the estate. Thus, the automatic stay continues in effect under Section 362(a) as to the Residence and Respondent is precluded from instituting foreclosure proceedings against the same without first seeking further relief from this Court.